**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**CASE NO. _____**

NIKOLA KOMATINA,

      Plaintiff,

v.

MAGICAL CRUISE COMPANY, LIMITED
d/b/a Disney Cruise Line,

      Defendant.

_____/

## SEAMAN'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues Defendant and alleges:

1.  Plaintiff, NIKOLA KOMATINA, is a citizen of Montenegro and seaman within the meaning of 28 U.S.C. § 1916 who is permitted to file this suit without paying the filing fee or costs.

2.  Defendant, MAGICAL CRUISE COMPANY, LIMITED (hereinafter "DISNEY"), is a foreign entity which maintains its principal place of business in Orlando, Florida.

3.  The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the Parties are completely diverse and the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the Court's admiralty jurisdiction.

4.  This Court has personal jurisdiction over Defendant because, at all times material hereto, Defendant personally or through an agent:

    a.  Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

**1**

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

b.  Was engaged in substantial business activity within this state;

c.  Operated vessels in the waters of this state;

d.  Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

e.  The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

5.  Defendant is subject to the jurisdiction of the courts of this state.

6.  The causes of action asserted in this Complaint arise under the Jones Act, 46 USC 30104, and the General Maritime Law of the United States. Notwithstanding the application of General Maritime Law and, pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury trial on all claims asserted herein.

## PRELIMINARY ALLEGATIONS

7.  At all times material hereto, Defendant, DISNEY, owned, operated, managed, maintained, and/or controlled the subject vessel, the *Disney Wonder*, and operated same under a flag of convenience.

8.  At all times material hereto, Plaintiff was member of the vessel's crew and was employed by Defendant as a seaman who lived and worked aboard Defendant, DISNEY's vessel in the capacity of a Dining Room Server.

9.  At all times material hereto, Defendant operated the vessel in navigable waters.

10. At all times material hereto, the Plaintiff held the status of a Jones Act seaman, as contemplated by 46 USC 30104, vis-à-vis the vessel and Defendant.

11. On or about June 30, 2018, Plaintiff injured his right knee, left hip and lower back aboard the subject vessel. Specifically, Plaintiff's injuries occurred while he was carrying a tray of passenger meals to serve Defendant's passengers dinner, and after Plaintiff had engaged in several

LIPCON, MARGULIES & WINKLEMAN, P.A.

consecutive trips of the same. As Plaintiff placed this particular tray of meals down on a side stand,

Plaintiff experienced a sharp pain in his right knee as well as left hip and lower back pain which

radiated down to his legs.

12. Plaintiff's above-described injuries were caused by dangerous conditions associated with

his shipboard employment with Defendant which included, but are not limited to:

a. Defendant did not employ the use of trolleys aboard the subject vessel, and/or any trolleys that may have been aboard the vessel were not reasonably accessible to Plaintiff in the performance of his job duties for Defendant. The absence and/or limited availability of trolleys aboard the subject vessel is contrary to cruise line industry standards, as other cruise lines employ the use of trolleys for the type of work Plaintiff was performing at the time of his injuries. Had Plaintiff been able to use a trolley for some or all of the work Defendant required Plaintiff to perform aboard the vessel, Plaintiff would have been able to perform his job duties in a safe manner, and would not have become injured.

b. Defendant understaffed the dining room in which Defendant assigned Plaintiff to work. For Defendant, Plaintiff worked in a two-person team system which, given the amount of passengers Plaintiff was required to serve and the degree of attention Defendant required Plaintiff to devote to their individual and specific needs, was insufficient to meet passenger needs and which further caused Plaintiff to be overworked, which caused and/or contributed to the subject incident and Plaintiff's resulting injuries.

c. Defendant overworked Plaintiff and did not provide him with sufficient rest. For example, Plaintiff ordinarily worked twelve or more hours a day on his feet with insufficient rest periods, which caused and/or contributed to the subject incident and Plaintiff's resulting injuries.

13. Defendant was aware of these dangerous conditions for reasons that include, but are not

limited to:

a. Defendant is a major cruise line who knows of, or should know of, cruise line industry standards. The absence and/or limited availability of trolleys on the subject vessel is contrary to cruise line industry standards, as other cruise lines employ the use of trolleys for the type of work Plaintiff was performing at the time of his injuries.

LIPCON, MARGULIES & WINKLEMAN, P.A.

    b.   Other cruise lines within Defendant's industry employ three or more person dining team system, which more efficiently and safely allow crewmembers like Plaintiff to carry out their job duties in connection with meeting passenger needs.

    c.   Defendant set Plaintiff's work hours and schedule and/or knew the amount of time and effort it would take to satisfy all of Defendant's passengers' needs; as such, Defendant knew, or should have known, that the work hours and/or schedule assigned to Plaintiff dangerously overworked Plaintiff to the point of dangerous physical fatigue.

14. Plaintiff presented to Defendant's shipboard medical center the day after the subject incident described above. Defendant's shipboard medical personnel immediately suspected that Plaintiff had sustained a right knee meniscus tear, but never prescribed him for an MRI, shipboard or shoreside. Instead, as Plaintiff was close to finishing his employment contract, Defendant's shipboard medical personnel encouraged and allowed Plaintiff to continue working aboard the vessel, despite his complaints of right knee, lower back and left hip pain. As a result of Plaintiff continuing to work aboard the vessel despite his injuries and constant complaints to Defendant about his injured body parts, Plaintiff's injuries became aggravated, and he suffered further injuries, including neck injuries.

15. At the end of Plaintiff's employment contract, Defendant medically disembarked Plaintiff from the vessel. Upon Plaintiff's return home for medical treatment, Defendant entered into contract with and approved Dr. Mladen Miskulin, a Croatian doctor, to perform surgery on Plaintiff's injured right knee.

16. Defendant, DISNEY, specifically contracted with and approved Dr. Mladen Miskulin to perform surgery on Plaintiff's injured right knee in order for DISNEY to carry out its non-delegable duty to provide Plaintiff maintenance and cure. As such, Dr. Mladen Miskulin became DISNEY's agent for the purpose of DISNEY carrying out its non-delegable duty to provide Plaintiff maintenance and cure.

4

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

17. Thereafter, however, Plaintiff experienced immense pain and suffering for several months until it was discovered that Dr. Mladen Miskulin, the doctor Defendant approved and contracted with to treat Plaintiff, had left metal artifacts in Plaintiff's knee while performing knee surgery on Plaintiff.

18. Despite notice of Dr. Mladen Miskulin's incompetence, Defendant, DISNEY, again contracted with and approved Dr. Mladen Miskulin to perform a second (revision) knee surgery on Plaintiff's injured right knee. Again, Dr. Mladen Miskulin became DISNEY's agent for DISNEY's purpose in carrying out its non-delegable duty to provide Plaintiff maintenance and cure.

19. Thereafter, Plaintiff underwent a second knee surgery to remove the metal artifact Dr. Mladen Miskulin negligently left in his knee. Thereafter, Plaintiff continued to experience immense pain and suffering for several months until it was discovered that, despite a revision surgery, Plaintiff still had metal artifacts in his knee. Thereafter, Plaintiff underwent a third knee surgery (a second revision surgery) to remove the metal artifacts.

20. During this period of time Plaintiff was receiving shoreside medical care for his injured right knee, Plaintiff developed a left knee meniscus tear. During this time Plaintiff also became aware that he was also suffering from disc protrusions to his lumbar and cervical spinal columns.

21. Also during this time, and while performing rehabilitation exercises for his knee injuries, Plaintiff fractured his left femur, which required him to undergo femur fracture repair surgery, necessitating sixteen screws in his left leg.

22. Pursuant to *Duarte v. Royal Caribbean Cruises, Ltd.* 761 So.2d 367 (Fla. 3d DCA 2000), all of Plaintiff's above outlined injuries fall within Defendant's maintenance and cure obligation to Plaintiff. *See id.* (holding that a seaman who had been injured aboard a vessel, but who had been

**5**

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

receiving medical care on land and was further injured in a car accident, was entitled to maintenance and cure from her employer for the car accident injures; "Under such a situation, a seaman is still in the service of the ship and thus entitled to maintenance and cure for the additional injuries incurred").

## <u>COUNT I – JONES ACT NEGLIGENCE</u>

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through twenty-two (22) as though originally alleged herein.

23. Under the Jones Act, Defendant owed the Plaintiff a duty to provide a reasonably safe place to work, including a duty to provide prompt, proper and adequate medical treatment shipboard and shoreside. *See e.g.  Rannals v. Diamond Jo Casino*, 265 F.3d 442, 455 (6th Cir. 2001); *Joseph v. Omega Protein, Inc.*, 2008 WL 4938504, at *4 (E.D. La. 2008); *Central Gulf S.S. v. Sambula*, 405 F.2d 291 (5th Cir. 1968); ); *Fitzgerald v. A. L. Burbank & Co*., 451 F.2d 670 (2d Cir. 1971).

24. On or about the above dates, Plaintiff was injured due to the fault and negligence of Defendant, DISNEY, and/or its agents, servants, and/or employees due to negligent acts that include, but are not limited to:

    a. Failure to use reasonable care to provide Plaintiff with a reasonably safe place to work; and/or

    b. Failure to promptly, properly, and adequately diagnose and treat Plaintiff's injuries when he presented to the vessel's medical center and as he continued to complain as his injuries became aggravated; and/or

    c. Failure to provide Plaintiff with prompt, proper, and adequate medical care shipboard and shoreside; and/or

    d. Failure to select, retain, approve and/or utilize competent, skilled and properly trained medical care providers shipboard and shoreside with which to provide Plaintiff prompt, proper and adequate medical care; and/or

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

    e.   Failure to carry onboard the vessel proper and adequate medical equipment with which to provide Plaintiff prompt, proper and adequate medical care; and/or

    f.   Failure to properly medically manage Plaintiff's medical care after Plaintiff became injured, shipboard and shoreside; and/or

    g.   Failure to timely disembark Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay.

25.  Defendant knew of the foregoing conditions causing Plaintiff's injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care should have learned of them and corrected them.

26.  As a result of the negligence of Defendant, DISNEY, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, lost income in the past, and his working ability and earning capacity have been impaired.  The injuries and damages suffered by the Plaintiff are permanent and continuing in nature and Plaintiff will suffer these losses and impairments in the future.  In addition, Plaintiff in the past and in the future has lost the fringe benefits that came with plaintiff's job, including but not limited to free food, free shelter, free medical care, free uniforms, vacation pay, the ability to make extra money doing side jobs and free airline transportation to the vessel and back home each contract.

    **WHEREFORE,** Plaintiff demands all damages entitled by law and demands jury trial of all issues so triable.

**7**

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

## COUNT II – UNSEAWORTHINESS

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through twenty-two (22) as though originally alleged herein.

27. At all times material hereto, Defendant Disney owned, managed, operated, and controlled the vessel *Disney Wonder*.

28. Defendant had the absolute non-delegable duty to provide Plaintiff with a seaworthy vessel on which to serve, including a competent crew.

29. The unseaworthiness of Defendant's vessel was a legal cause of injury and damage to the Plaintiff by reason of the following:

    a. The vessel was not reasonably fit for its intended purpose; and/or

    b. The vessel's crew, including Defendant's shipboard doctors, were not properly trained, instructed and/or supervised; and/or

    c. Defendant created an unsafe working environment; and/or

    d. The vessel did not have a fit crew; and/or

    e. The vessel's medical personnel were not properly trained, monitored and/or supervised to promptly, properly, and adequately diagnose and treat Plaintiff's injury when he presented to the vessel's medical center and as he continued to complain as his condition became aggravated; and/or

    f. The vessel's medical personnel were not properly trained, monitored and/or supervised to provide Plaintiff with prompt, proper, and adequate medical care when he sought medical attention for his injuries; and/or

    g. The vessel failed to carry and utilize competent, skilled and properly trained medical care providers on board and shoreside to provide Plaintiff with prompt, proper and adequate medical care; and/or

    h. The vessel failed to carry and utilize proper and adequate medical equipment with respect to treating Plaintiff's condition; and/or

    i. The vessel failed to carry and utilize properly trained medical providers to medically manage Plaintiff's medical care after he was injured; and/or

L I P C O N ,  M A R G U L I E S  &  W I N K L E M A N ,  P . A .

j.  The vessel failed to carry and utilize properly trained medical providers to provide Plaintiff prompt, proper, and adequate medical care, which aggravated his injuries and caused him additional pain and disability; and/or

k.  The creation of an environment onboard where the crew and Plaintiff were overworked to the point of being so exhausted that they were not physically fit to carry out their duties.

30.  As a result of the unseaworthiness of the vessel *Disney Wonder*, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, lost income in the past, and plaintiff's working ability and earning capacity have been impaired.  These injuries and damages are permanent or continuing in nature and Plaintiff will suffer these losses and impairments in the future.  In addition, Plaintiff in the past and in the future has lost the fringe benefits that come with Plaintiff's job, including but not limited to free food, free shelter, free medical care, free uniforms, vacation pay, the ability to make extra money doing side jobs and free airline transportation to the vessel and back home each contract.

**WHEREFORE,** Plaintiff demands all damages entitled by law and demands jury trial of all issues so triable.

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

### COUNT III – FAILURE TO PROVIDE MAINTENANCE AND CURE

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through twenty-two (22) as though originally alleged herein.

31. On or about the above date, Plaintiff was injured while in the service of the vessel as a Jones Act seaman.

32. Under the General Maritime Law, Plaintiff, as a seaman, is entitled to recover maintenance and cure from Defendant, his employer, until Plaintiff is declared to have reached Maximum Medical Improvement (MMI) and/or Maximum Medical Cure (MMC).  Maintenance and cure includes unearned wages (regular wages, overtime, vacation pay and tips), which were reasonably anticipated to the end of the contract or voyage, whichever is longer. In addition, an MMI declaration must be unequivocal, and if not, any doubts or controversy, regarding whether or not the seaman is at MMI must be resolved in favor of the seaman.

33. To date, Plaintiff has not achieved MMI for all injuries and medical conditions that have arisen in connection with Plaintiff's shipboard work with Defendant. *See e.g. Duarte v. Royal Caribbean Cruises, Ltd.* 761 So.2d 367 (Fla. 3d DCA 2000). As such, Plaintiff is entitled to receive medical treatment from physicians of his choice at Defendant's expense until he achieves MMI for all injuries and medical conditions that have manifested as a result of and in connection with Plaintiff's shipboard work with Defendant.

34. At all times material hereto, Defendant willfully and callously delayed, failed and/or refused to pay Plaintiff's entire maintenance and cure, and/or Defendant) willfully and callously delayed, failed and/or refused to provide the Plaintiff the level of cure that the Plaintiff needs to achieve MMI, so that Plaintiff has become obligated to pay the undersigned a reasonable attorney's fee.

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

35. At all times material hereto, Defendant's failure to provide Plaintiff's entire maintenance and cure is willful, arbitrary, capricious, in violation of the law, and in callous disregard for Plaintiff's right as a seaman. As such, Plaintiff would be entitled to attorney's fees under the General Maritime Law of the United States.

36. At all times material hereto, Defendant's unreasonable and/or callous failure to pay or provide Plaintiff with maintenance and cure aggravated Plaintiff's condition and caused him to suffer additional compensatory damages, including, but not limited to, the aggravation of Plaintiff's physical condition, disability, pain and suffering, reasonable fear of developing future physical and medical problems, mental anguish, loss of enjoyment of life, feelings of economic insecurity as well as lost earnings or earning capacity, and medical and hospital expenses in the past and into the future.

**WHEREFORE,** Plaintiff demands all damages entitled by law, attorneys' fees and demands jury trial of all issues so triable.

## COUNT IV – FAILURE TO TREAT

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through twenty-two (22) as though originally alleged herein.

37. On or about the above dates, Plaintiff was employed by Defendant, DISNEY as a seaman and was a member of the *Disney Wonder's* crew.

38. It was the duty of Defendant, DISNEY to provide Plaintiff with prompt, proper and adequate medical care shipboard and shoreside. *Central Gulf S.S. v. Sambula*, 405 F.2d 291 (5th Cir. 1968); *Fitzgerald v. A. L. Burbank & Co.*, 451 F.2d 670 (2d Cir. 1971).

39. Defendant, DISNEY, through the shipboard and shoreside physicians and/or nurses it selected, contracted with and/or approved to treat Plaintiff, negligently failed to provide Plaintiff

with prompt, proper, adequate, and complete medical care through negligent acts and/or omissions

that include, but are not limited to:

    a.   Failure to promptly, properly, and adequately diagnose and treat Plaintiff's injuries when he presented to the vessel's medical center and as he continued to complain as his injuries became aggravated; and/or

    b.   Failure to provide Plaintiff with prompt, proper, and adequate medical care shipboard and shoreside; and/or

    c.   Failure to select, retain, approve and/or utilize competent, skilled and properly trained medical care providers shipboard and shoreside with which to provide Plaintiff prompt, proper and adequate medical care; and/or

    d.   Failure to carry onboard the vessel proper and adequate medical equipment with which to provide Plaintiff prompt, proper and adequate medical care; and/or

    e.   Failure to properly medically manage Plaintiff's medical care after Plaintiff became injured, shipboard and shoreside; and/or

    f.   Failure to timely disembark Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay.

40.  As a direct and proximate result of Defendant, DISNEY's failure, Plaintiff suffered additional pain, disability and Plaintiff's recovery was prolonged. In addition, the Plaintiff was injured about plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, incurred additional medical expenses in the care and treatment of plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and plaintiff's working ability and earning capacity have been impaired. These injuries and damages are permanent or continuing in nature, and Plaintiff will suffer these losses and impairments in the future.

LIPCON, MARGULIES & WINKLEMAN, P.A.

41.  This Count is alleged separately from Jones Act Negligence pursuant to *Joyce v. Atlantic Richfield Company*, 651 F. 2d 676 (10th Cir. 1981) which states, in part, "Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief [for which separate damages are awardable]."

**WHEREFORE,** Plaintiff demands all damages entitled by law and demands jury trial of all issues so triable.

## COUNT V – CONTRACTUAL DISABILITY CLAIM

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through twenty-two (22) as though originally alleged herein.

42. Pursuant to the employment agreement(s) between Defendant and Plaintiff, Plaintiff is entitled to contractual damages, without prejudice to his claim in tort, in the event that he suffers a permanent disability and/or is unable to return to his profession as a seafarer as a result of an injury sustained during the course of his employment with Defendant.

43. As a result of the injuries outlined above, Plaintiff suffered a permanent disability and/or lost his ability to return to his profession as a seafarer.

44. Plaintiff hereby demands the maximum disability payment provided by the employment agreement(s) between Plaintiff and Defendant, in addition to, and irrespective of, his rights and causes of action available under the Jones Act and/or General Maritime Law.

**WHEREFORE,** Plaintiff demands all damages entitled by law and contract.

Dated: May 13, 2021

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

Respectfully submitted,

LIPCON, MARGULIES,
& WINKLEMAN, P.A.
*Attorneys for Plaintiff*
One Biscayne Tower, Suite 1776
2 S. Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By: */s/ Michael A. Winkleman*
  **MICHAEL A. WINKLEMAN**
  Florida Bar No. 36719
  mwinkleman@lipcon.com
  **JACQUELINE GARCELL**
  Florida Bar No. 104358
  jgarcell@lipcon.com
  **L. ALEX PEREZ**
  Florida Bar No.: 125452
  aperez@lipcon.com